Good morning. Good morning, Counsel. May it please the Court, Brian Malloy for Plaintiffs and Appellants, Lindy Banks, and Erica LeBlanc, and I'd like to reserve five minutes for my rebuttal. All right. Your Honors, I'd like to begin addressing the two questions that the Court issued on May 3rd concerning some of the issues on this appeal, and the first question has to do with Hampton and its effect on the procedural posture of this case, and I would make three points with regard to Hampton. The first is Hampton confirms that SLUSA is a subject matter barring jurisdictional motion, and so what that means is it confirms that the Court should look at claim by claim to SLUSA is barred under SLUSA. The Second Circuit in King Gate at footnote 9 has, while not holding that, has indicated that SLUSA as a matter of subject matter jurisdiction does not bar claims that are not barred by SLUSA, and that's important here because we do have two independent claims. We have the tax return fee preparation claim, and we also have the investment claim. Our position is SLUSA doesn't apply to either claim, but when you analyze claim by claim, and the District Court did not analyze the tax return preparation fee claim. He just focused on the investment claim, but in his dismissal with prejudice he swept up both claims, and if you look at the tax return claim, I don't think even Northern Trust would SLUSA would not apply. It doesn't involve securities. It does much less involve the in connection with and the deception and the fraud prompt, so that's really important because each of these claims have independent subject matter jurisdiction under CAFA, and only a SLUSA claim would be barred under Hampton, and that's consistent with Proctor. In Proctor, this court said you only dismiss SLUSA claims. You don't dismiss non-SLUSA claims, and so this sort of puts a subject matter jurisdiction teeth into Proctor's holding. And you would agree, counsel, though, that in terms of how we analyze the legal questions in this case, whether it's through 12b-1 or 12b-6, the noble review, the legal analysis is the same? Correct, and my second point would be having to do with the standard of review. There's two actual ways to file a 12b-1 motion. One is a facial attack, and that's attacking the pleadings, and the other is a factual attack where you're presenting evidence and even having a hearing. And here it can only be construed as a facial attack. There was no evidence. There certainly was no hearing. And under a facial attack, this court has said that you apply a really similar, if not identical, standard to a Rule 12b-6 motion, and that's important because that means all the factual allegations in the complaint are taken as true. All inferences are construed in the complaint's favor, the plaintiff's favor, and the complaint should be liberally construed. The last point I would make with Hampton is the dismissal should have been without prejudice. The dismissal here was with prejudice, and all claims were dismissed. And Hampton, consistent with the other courts who have called it a 12b-1, it's not a dismissal on the merits. It's a procedural dismissal. But I think the important point is, though, on this standard of review because we are here on a pleading change, a challenge. And this gets to the second question the court has asked about, and that has to do with whether or not there's any kind of agency relationship between a trustee and a beneficiary. And the answer is clearly no, particularly when you look at the complaint's allegations in this case. The complaint never alleges there was any agency relationship. In fact, the complaint alleges the exact opposite. Paragraph, I'll just give some examples, but there are many. Paragraph 360, the trust beneficiaries in the investment class had no control over the investments. Paragraph 16, all investment discretion lies exclusively with the trustee, Northern Trust. Paragraph 41, Northern Trust has sole discretion with regard to any investments. And actually, not just, and there are others, paragraph 42, paragraph 45 through 47, paragraph 30, paragraph 282, I could go on and on. But the allegations in this complaint have nothing to do with agency and everything to do with a revocable trust with captive beneficiaries. In the case law, the court cited two cases in its order and asked if we would come and address additional authority, and I have. And I've divided it into sort of two categories. The first category is the restatement, the restatement of agency and the restatement of trust. And the second category are cases from this circuit primarily that have adopted that. And so I would direct the court's attention to the restatement of agency, second, section 14B, and that has to do with the distinction between a trust and an agency. And it goes through many of the factors, but the critical factor is control. An agency must have control. If there is no control, there is no agency. The trustee holds legal title. The agent operates under the direction and under the control of the principal. This principal is also set forth in the restatement of trust, section 8, and in the restatement of agency, section 101, it's comment G, and in 104.10. And this court has looked at these cases, and this court, and I have many cases, but I will just point to three particular cases that highlight this distinction. The first case is NLRB versus United Brotherhood of Carpenters, and it's 531 F2D 424. And in this case, the defendants were the union and the pension trust, and the union was found to have discriminated against an employee. The employee sued, and the administrative law judge said, union, you're liable, and by the way, trust, you're liable too as an agent. The trust appealed and said, I'm not an agent, I'm a trust. And this court went through the differences, citing the restatement of trust, section 8, citing the restatement of agency, section 14B, and said, looking at the relationship between the trust and the union, there's no agency relationship, and so it reversed the award against the trust. Another case from this court, Nelson versus Sirwald, 687 F2D 278. In this case, the defendant bought shares under a pooling arrangement, so he bought the shares, but he was actually only the owner of 30% of the shares. And the plaintiff was trying, there was fraud, and the plaintiff sued and tried to get him to disgorge the profits from all the shares he bought, claiming he's an agent. And the court said, no, when looking at this arrangement, a trust and an agent are completely different under the law. And when looking at this relationship, this was not an agency relationship. This was a trust relationship. He held those shares as beneficial for the others, but the others did not have any control over his directions, and so in that case, agency was not found. The last case I would point to from this court is the Desser case, 353 F2D 468. And in there, the issue was, was the trust valid? There was a trust, and is it valid? And the plaintiff said, no, the trust is not valid because it's an agency relationship, and an agency is not a trust. And the court analyzed the trust. The trust actually gave some powers to the settler, the trustor, and the court said, even with those powers, that did not create an agency. And so those are three cases from this court. There are cases from across the country and also from this court discuss this difference between agency and trustee, and the key factor from these is control. Who has control? The Henderson case, we talked about the Henderson case a lot in our briefing from the Chief Judge Saris from the District of Massachusetts. She dealt with this too. She dealt with a case that is identical claims as ours regarding the investment class. And she said, look, the trust in this case is an irrevocable trust. The beneficiaries have no discretion at all. They have no control, no discretion. They just are the trustee gets to do what he wants to do because the trustee has a legal title. So I think Henderson is also very relevant on that point. And if I could reserve the balance of my time. Certainly. Here we go. May it please the Court, my name is Craig Martin. I represent Northern Trust. I'm going to go through some of the points that counsel just made in your order to begin with just to get things cleared up with regard to our position. With regard to the Court's question or order on 12b-1 versus 12b-6, Northern Trust's basic position is this, 12b-1 is the appropriate way to dismiss this case in light of the recent case law. And let me explain that a little bit. We think that it should be a 12b-1 dismissal with prejudice, which would mean in this case that you cannot bring a state law class action arising out of the same transaction and occurrence. We think that that's the right result after taking a look at the case law. With regard to the trust agency issues, the Court also in its order identified a couple of cases, and we have a few things to say about that that we wanted to fill the Court in in terms of additional authority. First of all, the Taylor versus Mayo case from 1884, its key holding we think is essentially that a trustee can be personally liable. California Probate Code, Section 1800 through Section 1805, changes that in 1990 with regard to the key holding. So the Court should be aware of that. The second thing here is with respect to the difference between an agency and a trust, I will overview. We think that that's a distinction without a difference under SLUSA. But let me give you a little bit of trust law and some citations as the Court asked for. Trustees and agents in many ways have similar and indistinguishable duties. For example, trustees and agents both have a fiduciary duty. The cases that we give you for that are the Leimert case, L-E-I-M-E-R-T, 125 Cal App III, 186 from 1954, and the Darrow versus Kline case, 111 Cal App 310 at 316 from 1931. In addition, the California statutes with regard to agencies and trusts apply with equal force with regard to these duties, and it's California Civil Code, Section 2322, which takes you to Civil Section 16002, which is the duty of loyalty applies to agents and trustees. 16004, the duty not to self-deal, applies to both. And 16005, the duty to avoid, and I'll say inappropriate, conflicts of interest applies to both. So with regard to trustees and agents, that is our basic take with respect to it. What about counsel's point as to the question of control? Agents act at the direction and control of principles, and here the allegations in the complaint indicate that the beneficiaries have no control over the investment decisions. How do you address that point? Well, I think the case that is the most, the case law addresses that point for you. There's two lines of cases that address that, and I'll start with the SEC versus Zander case. In SEC versus Zander, which is the fact situation, is an agent who, sorry, a principal who gives to an agent a full power of attorney to trade stocks in that particular case, full discretion to the agent to trade stocks. And the agent trades stocks with that full discretion, and the agent, and that is found to be a violation. With regard to, if you then, that happens with regard to the O'Hagan case as well, and then if you look at the, there's four trustee cases by circuit courts of appeals. They are the Studi-Broser case from this circuit, the Ninth Circuit, the Siegel case, the Siepel case from the Eighth Circuit, and the KUTTEN case from the Eighth Circuit. In each of those cases, a trust is found to be, fall within the contours of SLUSA. So the control point with regard to whether a beneficiary actually controls the trades or whether a principal actually controls the trades, those are always going to depend on the terms and conditions of the trust and the terms and conditions of the agency. But the case law under SLUSA makes it clear that it's all subsumed under SLUSA. Regardless of the degree of control. Regardless of the degree of control. It is not, there is no control test. The appropriate test, Your Honor, to get to the issue that is sort of backwardly briefed, if you will, what they're really talking about in their, one of the core issues in the case is this choice case, right? And a couple of, a magistrate judge's opinion and a district court opinion in these Bank of New York cases that are outliers. And just to go through the basic legal analysis. In the Dabbitt case decided by the Supreme Court, the legal standard, when you look at what in connection with means, the Dabbitt case says that it means coincides with the activity, coincides with the trading, coincides with whatever the deceptive conduct is or the misrepresentations and omissions. Choice, then, the choice decision then goes through its language and its holding. And in the choice decision, they are explicit that they do not change the holding or the coincides with standard of Dabbitt. And in fact, the choice decision only deals with A, of the statute, which is misrepresentation or omission of material fact in connection with the trading of covered securities and does not deal with B, of the statute, which is deceptive device, manipulation, contrivance in connection with the trading of covered securities. This court's decision, the Ninth Circuit's court's decision in Fleming makes it clear at footnote five that they reject the notion that choice changes Dabbitt. So then what our colleagues on the other side of this case do is they try to shoehorn this case into a choice situation as opposed to a situation that's much like SEC versus Zander or the trustee cases decided by the Fourth Circuit. I'm looking at the language of choice and it says that someone making that decision, referring to the decision to buy and sell, has to be a party other than the fraudster. And the majority opinion goes on to say that if the only party who decides to buy or sell a covered security as a result of the lie is the liar, that is not a connection that matters. So there that was an interpretation of what the in connection with really means. How do you address that language? Well, in this case, this case is different than the choice case. In this case, and it's factually distinguishable as well as legally distinguishable. First of all, Northern Trust was purchasing in its capacity as a trustee for the benefit of beneficiaries of the trust. For the trust and the benefit of beneficiaries of the trust. Those beneficiaries of the trust have an equitable interest in the stock. And to give you a case on that, it's City of Palm Springs, 70 Cal App 4th, 613-620-1999. So they actually have a beneficial interest. So you're purchasing on behalf of a trust, and you're purchasing on behalf of the beneficiaries of the trust who actually are really who has the beneficial ownership of that stock. In choice, the fraudster in choice, right, was allegedly going to buy uncovered securities for, or sorry, was allegedly going to buy covered securities for the fraudster itself. So in choice, the fact pattern, Your Honor, is simply this. The victims in choice, if you will, purchase uncovered securities. That's undisputed. There's no purchase of covered securities within choice. The alleged deceptive conduct, or I should say actually more specifically, the misrepresentation in choice, is that the fraudster essentially tells the folks buying uncovered securities that they are going to go back up those uncovered securities by the fraudster buying covered securities for itself. So there's no, in choice, there's no factual issue with regard to the fraudster or the victim. There's no issue in which the victim is actually buying any covered securities. So in terms of choice, it really explores the contours of how far SLUSA can go and how far SLUSA can't go. So choice doesn't even meet the, if you look at the elements of SLUSA, it doesn't even meet the fifth element of SLUSA, which says you need to buy covered securities. And certainly choice goes through its analysis and says this is just too remote. But it doesn't change the fact pattern in cases like Xander in which there is a broker who essentially goes out and buys and sells stock on behalf of an agent who gives them full and unfettered discretion to do so under a power of attorney. And the trading in covered securities is adjacent to the fraud. So it's a different fact pattern than we have here. When you think back to why SLUSA was passed, in the 90s there were all these lawsuits where a CEO would come out and say, I think we're going to have a great year. We have this new product. And it didn't work out. Then you'd have a plaintiff's lawyer saying, well, look, the stock dropped 20%. I'm going to sue you for 20% or the market cap, you know, $20 billion lawsuit. And so SLUSA was passed to stop those type of lawsuits. And help me out here because in this case you can imagine a situation where the plaintiff is a minor or an invalid or someone who cannot enter into a contract. So there's no way they can have any say at all in terms of what the trust does. How would SLUSA's purposes be served if you didn't allow a minor or invalid to sue saying that the funds are being mismanaged? So with regard to the funds being mismanaged, right, that's a different claim than we have here. With regard to the core claim that we have here, and look, with regard to the core claim that we have here, the real test, if you strip it away, is the core claim is that Northern Trust engaged in a deceptive practice, a contrivance and so forth, in order to put people into, or trusts, into Northern Trust proprietary funds, right? So classic 10B type of claim, type of stuff under 10B. SLUSA's basic purpose with respect to that is simply to shut down a loophole after the PLSRA of 1995, I think. SLUSA's passed in 1997 because plaintiff's lawyers then went around filing state law claims, alleging class actions of 50 or more. I think in the hypothetical that Your Honor talks about, look, SLUSA does not preclude or prevent somebody from bringing a case on their own behalf, right? It's talking about class actions for 50 or more under state law, where those state law claims, when you shred it all away and look at the gravamen of the complaint, where it's really a 10B claim or a 10B-5 claim. No, and I appreciate that finer distinction on it, but again, I'm using the word all allegedly, right? No, this is all allegedly. The victim in this case did not have a say. The victim did not make a decision based on a misrepresentation, where what I think the typical SLUSA case is the victim, they bought or sold stock based on what the company said. So explain why I'm wrong about that. So I think you're thinking about a typical 10B-5 case too. Yes. But in terms of if you look at SEC versus Zander and if you look at the statute and you look at B, B talks about deceptive practice that is essentially coinciding with the actual trading. So there's no misrepresentation being made to the victim to trick them into buying something. Instead, there's a deceptive practice that coincides with the trading that is being done in a wholesome way, if you will. So prong A is about misrepresentation and omission. Prong B is about deceptive practices and contrivances and it's very broad language. It actually doesn't even have a materiality qualification in B. So the fact pattern here is slightly different than the typical fact pattern that you might think about with regard to a classic 10B case. But if you look at the case law and you look at Zander and you look at O'Hagan, you look at Judge Easterbrook's decision in the Seventh Circuit, which is cited in our brief, as well as the trust cases, you'll see that those cases are really talking about adjacency as opposed to the classic misrepresentation that goes to an individual. And those are covered by 10B. So it would be your position then, effectively, that I'll call it the trust distinction that the plaintiffs are trying to make here and that the district court in that Henderson case made. You're saying that that's a false distinction at the end of the day. It really matters that it's the security being involved, not so much who is the supposed victim in the case. It's a false distinction and it's in terms of, with regard to a trust, you always have the ability to bring an individual action if you've got a problem with regard to the trading interests. So it's not shutting somebody's rights out. It's just precluding what the federal law intended to preclude. So that's the consistency. With respect to, there is a lot of fine distinctions with regard to trust law and agency law. With respect to it, in this case, Northern Trust acts in its capacity as a trustee and then there's a beneficiary who actually has the equitable and ownership rights, like the bundle of sticks. So it's just a different set of issues. With regard to those two district court opinions, one is a magistrate judge under a Rule 72 review right now, and the other one, we just think they're wrongly decided. And with regard to this court's decisions, we think that the line of cases that this falls into are the SEC Zander cases as well as those trust cases from the other circuit courts of appeal. I have much more to say, but I am out of time. I'd be happy to answer any questions, but you probably want me to go sit down. Well, let me see if my colleagues have additional questions. Thank you very much. Thank you, Your Honors. To touch on what counsel said, first of all, control is determinative of whether or not there's an agency analysis, and this is highlighted in Trois. Trois gave important clarification on the in-connection prong. Trois also, the Northern Trust relies heavily on Zander and O'Hagan. Trois also discussed those two cases and why they didn't compel a finding of no in-connection. It's because in those cases, the victim was the owner of the securities. So Trois made that clear. Here, the beneficiaries are not the legal owners. The trustee is the legal owner. This is an important distinction in trust law going back centuries. The beneficiaries have very little remedies. They can file a suit under the probate code for breach of fiduciary duty, but other than that, beneficiaries, unlike a broker, I hire a broker, he's doing a bad job, I can fire him. The beneficiaries have no control to remove the trustee unless they go to court and seek court approval. They have no say in the investments. They have no say in how it's managed. And our case is not a deception case. One final point with the in-connection. That is a prong for both the deception, an element for both the deception element and the fraud element of SLUSA. If the in-connection requirement is not satisfied here, that's the end of the SLUSA analysis. SLUSA cannot apply, and there's no need to go analyze whether or not there's deception here or fraud. But if the court was to look at whether or not there's deception or fraud, there's not. Stude Broser clearly held that a complaint may allege a violation of a trust administrator's fiduciary duty to the trust beneficiaries, even when that violation involves trading in covered securities, so long as there isn't an allegation of misrepresentations or omissions. And that's what we've done here. We have made allegations, and these are the breaches with the investment class. They failed to conduct an individualized review of the trust assets. They relied on this big Northern Fund portfolio where they put all these captive trusts into. They failed to do an individualized review. They failed to continually review the trust assets to make sure that it's good for this particular trust. And they refused, or they failed, to remove poorly performing assets from this trust and that they put their own interest in violation of the duty of loyalty, which doesn't include fraud or omission. They put their own self-interest above others. This is not the type of deception or fraud that is covered by the 1933 or the 1934 Securities Acts. Now, Counsel, real quick, are you aware of any cases post-Trois that address this trustee issue? I know there's Henderson, and then there's the recent Bernard, I think is the name of the case. Are there any other cases post-Trois that you're aware of that deal with this? Siegel, obviously, is not a good case for you guys, but that's pre-Trois. I'm not aware of any, and I was going to say Siegel and Siepel, which they also rely on. Those are pre-Trois, and Trois, as to the in-connection with Standard, Trois has cast doubt on their holdings or effectively overruled them. Our beneficiaries, can she sue by herself? Yes, but the beneficiaries of trusts have very little remedies under the trust law. Our class action complaint is solely based on captive trusts where there is sole discretion with the trustee. So this isn't a situation where you're going to have a beneficiary with some discretion in the investment class. This is based solely where the trustee has exclusive control over the investments. And trust beneficiaries have very little options under the law, and this breach of fiduciary duty is one of them. Thank you. Thank you very much, Counsel. Both sides, very helpful arguments in this case involving some interesting and difficult issues. We'll take the matter under submission and issue a ruling later in the case.
judges: Nguyen, Owens, Antoonii